BARCLAY MUMM, Plaintiff-Appellee, v. TROY TOWNSHIP SCHOOL DISTRICT OF IOWA COUNTY et al., Defendants-Appellants.

No. 47438.

(Reported in 38 N. W. 2d 583)

1058 

■ 

August 5, 1949.

H. B. Claypool and E. J. Von Hoene, both of Williamsburg, and Hatter & Hatter, of Marengo, for appellants.

Swift & Swift, of Marengo, for appellee.

Mulroney, J.—The defendant school district and its officers and directors appeal from a judgment and decree ordering that a writ of mandamus issue, commanding them to furnish transportation for plaintiff's children to and from the school in Williamsburg, in accordance with the provisions of section 279.19, Code, 1946. In the trial court the defendants had answered that they had made diligent effort to arrange for the transportation of plaintiff's children but had been unable to contract with any person to transport the children for reasonable compensation. Their answer admitted all of the material allegations of plaintiff's petition; that plaintiff was the father of four little children of school age, the oldest being nine; that the Troy Township School No. 5 that plaintiff's children should attend is closed and the school in Williamsburg had been designated by the board as the school plaintiff's children should attend; and that plaintiff's home in Troy Township is approximately three and one-half miles from the Williamsburg school. The answer

further stated that the district had no school bus because defendants had "determined that because of the excessive costs thereof and because of the fact that no funds are available for such purpose, it would be inimical and detrimental to and would place an unnecessary burden upon defendant school district to purchase a school bus or other conveyance for the purpose of transporting the children" to Williamsburg. The answer stated the other children in the township were transported to school by their parents under contract with the board and alleged that plaintiff's petition for the writ of mandamus was not brought in good faith but actually was brought for "the purpose of coercing defendant directors into paying plaintiff an exorbitant and unreasonable compensation" for transporting his children to the Williamsburg school.

The defendants seek reversal here on two grounds, (1) the uncontradicted evidence shows that it was impossible to arrange for the transportation of plaintiff's children, and the writ therefore commanded the performance of an act that was impossible of performance, and (2) the court erred in finding the equities were with plaintiff for the reason that the record shows that plaintiff did not maintain his action in good faith but merely for the purpose of coercing defendants into arranging with plaintiff for the transportation of his own children upon terms dictated exclusively by him.

I. Section 279.19, Code, 1946, provides in part as follows:

"When children enrolled in an elementary school other than in a consolidated district live two and one-half miles or more from the school in their district or subdistrict or when the school in their district or subdistrict has been closed and they are thereby placed more than two miles from the school designated for their attendance, the board shall arrange with any person outside the board for the transportation of such children to and from school and the cost of such transportation shall be paid from the general fund * * *."

The defendants' duty to provide transportation is mandatory. Harwood v. Dysart Consolidated Sch. Dist., 237 Iowa 133,

21 N. W. 2d 334. Defendants' answer is in the nature of confession and avoidance. They in effect confess they have the statutory duty but seek to excuse their nonperformance of the mandate of the statute by pleading, (1) their inability to contract with anyone to haul these children for a reasonable price, and (2) no funds are available for the purchase of a bus and it would be unnecessarily burdensome on the district to purchase a bus for the transportation of plaintiff's children. The defendants had the burden of establishing their defense. 55 C. J. S., Mandamus, section 325b; Ontjes v. Harrer, 208 Iowa 1217, 227 N. W. 101.

The record shows without dispute that plaintiff had reluctantly transported his children during the prior school year and had informed the president and secretary of the school board before the 1948–1949 school year that he would not be able to transport his children for that term. There is no clear evidence that the board did anything before the term started toward trying to hire someone to haul these children, or in fact before the suit was started on September 10, 1948. The reason nothing much was done earlier, according to the secretary of the board, was because the board had contracts with all the parents of pupils except the plaintiff and one Clyde Jones and they thought these two could be persuaded to sign contracts to haul their children. The board seemed to be of the opinion that it had the option of providing bus transportation for all the children or contract with the parents, and further, that its full duty to transport was performed if it set up a schedule for parents' compensation for transportation of their own children. The board's duty was to transport and it is no excuse that it failed in its effort to shift this duty to the parents. It completely failed as to the Clyde Jones children, who did not go to any school during the 1948–1949 term, because their father either could not or would not transport them to the Williamsburg school.

Nearly all the directors told of having contacted several persons whom they asked to contract to haul plaintiff's children. In only one or two instances was there any compensation mentioned. They all told of how the persons contacted refused the job. Where the persons contacted are described, they were

farmers, truckers or persons with other jobs. Under the board's schedule, if that were adhered to, the compensation for the hauling of plaintiff's children, over one of the poorest roads in the county, would be $35 a month. The advertisement (inserted in the paper about a month after the suit was brought) failed to produce applicants who were willing to contract to transport plaintiff's children.

The record is silent as to the financial condition of the district—the condition that defendants pleaded would render a bus purchase unnecessarily burdensome on the district. Defendants set forth a list of their contracts with the parents. They are paying these parents about $450 a month to transport their own children. Four of the directors' wives have contracts to transport their children and the record shows that some of the contractees have children of high school age who drive to and from the school and the contractee parents do not accompany the children. The $450 figure does not include what the district would have to pay to transport the children of Clyde Jones and the plaintiff. In spite of this amount being paid monthly (for a nine-month term) the secretary testified the board never even considered buying a school bus. Even if it be thought a school district would be excused from buying a bus, because such purchase would be "an unnecessary burden", the pleaded defense is not sustained by the record.

 There is no force in an argument that the transportation of plaintiff's children was *impossible* when almost all of the children in the district (and all of the directors' children) were being transported at the expense of the district. The funds of the district are to be devoted to the transportation of all of the children in the district. They are all equally entitled to conveyance. No defense of want of funds to carry out the command of this statute would be available unless there was a showing that all children in the district were deprived of conveyance by lack of funds. It is not a question of how much it will cost the district to transport this child or that child. The district has no right to say it will transport certain children but to transport the remainder will be too costly. The district has no right to discriminate. It must furnish conveyance for all of the

children. And it is no excuse that plaintiff refused to contract to convey his own children. There was no statutory duty compelling him to so contract. It is likewise, no excuse that to convey his children, in view of his refusal to convey them himself, would be costly and burdensome on the district. It is a poor answer to give plaintiff's children (sometimes seen trudging home from school as late as nine o'clock at night), that the district, that could pay about $4000 a year to transport the other children, could furnish no conveyance for them.

▇▇ ▇▇ II. There is no evidence in the record to sustain defendants' charge that plaintiff's action was not brought in good faith but actually for the purpose of forcing the board to pay him an exorbitant amount to haul his children to school. The charge is utterly unwarranted. Plaintiff is a tenant farmer, thirty-two years old, and he does some custom work for other farmers. His wife helps with the chores, does some field work and works part of the time at a seed-corn plant in Marengo. His automobile was a 1936 Plymouth "in poor condition." He told the president and secretary of the board, before the school year started, that he would not be able to transport his children that year. He testified he did not want the job at any price.

Defendants do not point to any evidence which would sustain the charge of bad faith. In their argument they say it is sustained by the "whole record" and the entire argument would lead one to think defendants are laboring under the impression that there was some duty on the part of plaintiff to transport his children—a duty which the other parents in the district bore with respect to their children. A short answer to the entire argument is that there was no duty on the part of plaintiff to transport his children. If the directors of a school district close a township school, the statute commands as a prerequisite that the board must designate the school the children are to attend and must furnish transportation to such school. It is not compatible with our boasted free common school education, so jealously guarded in our Constitution, and in all our laws, for a board to close the small country school and then tell the parents in the district that they must transport their children to the town school. Education is not always made free merely because there

is no tuition charge. It is costly for parents who have to take hours from their work (where the pay is no doubt much higher per hour than the board would pay) to haul the children to school. In this age of increasingly rapid transportation we are witnessing the passing of the little country school. Children in the rural areas, that once supported the country school, are being sent to town, city and consolidated schools where better school facilities are provided. And the rural area, that once supported the little country school, is now charged with the duty of furnishing tuition and transportation for the children's attendance at the larger schools. It is this mandatory duty that defendants failed to carry out. The fact that plaintiff, after the testimony was closed, finally offered to transport the children for $50 a month is no proof at all that he was endeavoring to force the directors into an exorbitant hauling contract. Rather it shows a disposition to make the best out of a bad situation. Faced with a situation where the defendants failed to do their duty and filled with a desire to have his children educated, plaintiff offered to perform that duty at what perhaps would be a financial sacrifice to himself. The court was clearly right in holding the suit was brought in good faith and the equities were with plaintiff. The decree of the trial court is affirmed.— Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.